UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 3:24-CR-1370-KC |
| YOHANGEL MARTINEZ GONZALEZ | § § | |

## DEFENDANT YOHANGEL MARTINEZ-GONZALEZ'S MOTIONS TO SUPPRESS AND TO DISMISS WITH SUPPORTING MEMORANDUM

Defendant YOHANGEL MARTINEZ-GONZALEZ (hereinafter "Mr. Martinez-Gonzalez") moves to suppress evidence obtained from an illegal search and seizure conducted on June 6, 2024, as well as all evidence and statements derived therefrom. He further moves for dismissal of the present Indictment as a result of illegal conduct by investigating agents. In support thereof, he would show as follows:

**I. BACKGROUND**

The following facts are taken from the Affidavit of Border Patrol Agent Matthew Miller, attached to the Criminal Complaint (Doc. No. 1), the Report of Investigation ("ROI") dated June 6, 2024, authored by Agent Luis A. Silva, and Agent Millers's testimony at the Preliminary Hearing conducted in this case on June 12, 2024.

According to the Affidavit, on June 06, 2024, Border Patrol Agents with the Ysleta Border Patrol Station posed as a delivery driver and conducted a "knock and talk" at the 11000 block of Perlette Street in Socorro, Texas. During this operation, agents "encountered the defendant," identified themselves as delivery drivers, and questioned Mr. Martinez-Gonzalez.

1

[1]The Agents then entered the house, identified themselves as Border Patrol Agents, and took Mr. Martinez Gonzalez into custody. During this "knock and talk" many Agents were surrounding the residence in preparation for an arrest. Further, to enter the residence, Agents must drive or walk down a driveway leading to the residence.

On July 01, 2024, the Government filed the present Indictment charging Mr. Martinez-Gonzalez with conspiracy to harbor aliens, 8 U.S.C. § 1324. (Doc. No. 11). Mr. Martinez-Gonzalez now files the present Motion to Suppress.

## II. ARGUMENT

Mr. Martinez-Gonzalez moves to suppress all evidence, including physical evidence and subsequent statements, derived from the "knock and talk" conducted on June 06, 2024. He further moves to dismiss the Indictment based on the illegal conduct of investigating agents.

### A. Fourth Amendment Requirements

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV Warrantless searches are *per se* unreasonable and therefore illegal unless falling withing a well-defined exceptions to the requirement for a search warrant. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973). Should the Government conduct a warrantless search

---

[1]The federal agents, in not identifying themselves as agents, sought to impersonate the smugglers in a calculated effort to get the aliens inside to open the door. This deception prompted the aliens to confront the agents face-to-face.

or seizures, it bears the heavy burden of establishing the reasonableness of its actions under the Fourth Amendment. *See Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984).

In this case the Government cannot argue that the present search was conducted pursuant to a duly issued search warrant. As such, it has the weighty burden of establishing that the search was conducted pursuant to a recognized exception to the search warrant requirement. This it cannot do.

**B. The Government Cannot Establish That This "Knock and Talk" Was Conducted Reasonably**

The Government will argue that their all information acquired from that exchange on June 6, 2024, was the product of a permissible "knock and talk." Mr. Martinez-Gonzalez disagrees with this characterization.

As written recently by the Fifth Circuit in holding a "knock and talk" unconstitutional, "[t]he purpose of a knock-and-talk investigation is to make investigatory inquiry, or, if officers reasonably suspect criminal activity, to gain the occupants' consent to search . . .. The purpose… is not to create a show of force, nor to make demands on occupants, nor to raid a residence." *United States v. Hernandez,* 392 Fed. Appx. 350, 352 (5th Cir. 2010) (citations and internal quotation marks omitted). This decision was based on precedent defining the parameters of an appropriate "knock and talk," specifically

> When officers demand entry into a home without a warrant, they have gone beyond the reasonable 'knock and talk' strategy of investigation. To have conducted a valid, reasonable 'knock and talk,' the officers could have knocked on the front door ... and awaited a response; they might have then knocked on the back door .... When no one answered, the officers should have ended the 'knock and talk' and changed their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance.

3

*United States v. Gomez-Moreno,* 479 F.3d 350, 355-56 (5th Cir. 2007).[2].

In assessing the propriety of a "knock and talk," the appropriate inquiry is whether "a reasonable person would feel free to disregard the police and go about his business." *United States v. Fernandes,* 285 Fed. Appx. 119, 123 (5th Cir. 2008) (quoting *Florida v. Bostick,* 501 U.S. 429,434 (1991)); *see also United States v. Jerez,* 108 F.3d 684, 689 (7th Cir. 1997) (holding "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter") (cited with approval in *United States v. Anderson,* 160 Fed. Appx. 391,392 (5th Cir. 2005)). In this case, there is nothing to suggest that Mr. Martinez-Gonzalez felt free to avoid the encounter with the agents. The facts instead strongly support the conclusion that he felt compelled to address the agents after the agents impersonated to be smugglers.

Convinced they would find undocumented aliens, agents knocked on the door to the residence posing as if they were not law enforcement. This "knock and talk," does not suggest a legal approach, but instead is properly characterized as calculated deception. This should have ended the exchange as the appropriate course of action defined by the Fifth Circuit is to monitor, not confront or invade private premises.

**C. All Evidence Must Be Suppressed as a Result of Illegal Search and Seizure**

It is beyond question that all evidence derived from an illegal search and seizure must be suppressed as obtained in violation of his Fourth Amendment rights and therefore "fruit of the poisonous tree." *Taylor v. Alabama,* 457 U.S. 687, 692-93 (1982). The Supreme Court in

---

[2] The Seventh Circuit held that a "knock and talk" was appropriate when officers approached a motel room in the middle of the afternoon, knocked only twice, and then stated after the second knock that they could return at a later time if the time was inconvenient. *United States v. Adeyeye,* 359 F.3d 457, 462 (7th Cir. 2004). The Seventh Circuit had previously found a "knock and talk" unreasonable and coercive when officers approached a motel room at 11 p.m. and took turns knocking on the door for several minutes, commanded, "Police. Open up the door. We'd like to talk to you," and then proceeded to knock on the window and shine a flashlight in the window. *Id.* at 461.

*Taylor* further noted that a waiver of *Miranda* rights will not validate a statement made following an illegal search. Furthermore, there are no intervening breaks between the stop, search, arrest and admission that would otherwise serve to salvage any of the evidence obtained. *Id.* at 693. All evidence should therefore be suppressed as a product of an illegal search and seizure.

### D. Remedy for Violation

Once the Court finds that a seizure violates a defendant's Fourth Amendment rights, it has but one option. In addressing whether evidence derivatively obtained from a violation of the Fourth Amendment might be admissible against the accused at trial, the Supreme Court declared

> The exclusionary prohibition extends… to the indirect as well as the direct products of such invasions. . . As subsequent cases have confirmed, the exclusionary sanction applies to any "fruits" of a constitutional violation-whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention.

*United States v. Crews,* 445 U.S. 463,470 (1980) (citations and internal quotation marks omitted); *see also Taylor v. Alabama,* 457 U.S. 687,694 (1982) (arrests in violation of the Fourth Amendment); *Mapp v. Ohio,* 367 U.S. 643, 655-57 (1961) (unconstitutional searches and seizures). The direction is thus clear - once the Court identifies a violation of a defendant's Fourth Amendment rights, all evidence and statements resulting from the illegal search must be suppressed.

### E. Dismissal ls Appropriate

The Government will undoubtedly argue that this Court's determination that the search was conducted in violation of the Fourth Amendment will not result in exclusion of evidence of his identity. *See, e.g., United States v. Herrera-Ochoa,* 245 F.3d 495, 498 (5th Cir. 200l) (declining to exclude fingerprints and A-file evidence following illegal arrest but excluding confession obtained as a result of illegal search and seizure). This, does not, however end the inquiry.

The Due Process prohibits outrageous conduct by law enforcement agents. As acknowledged by the Fifth Circuit, "[t]he due process clause also places other limits on improper conduct by law enforcement agents, even as against culpable persons." *United States v. Nissen,* 928 F.2d 690,693 (5th Cir. 1991). Conduct deemed sufficiently outrageous requires dismissal as "due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *United States v. Evans,* 941 F.2d 267,270 (5th Cir. 1991) (internal quotation marks omitted).

In this case, the federal agents obviously knew they lacked probable cause and therefore lacked a basis to obtain a warrant. Agents entered the private property and forced an encounter using deceptive practices. As trained federal agents, they are also well aware that the Fourth Amendment would not require suppression of the identity of an undocumented alien if they were to violate well-established Fourth Amendment standards governing searches and seizures.

In deciding to press forward in disregard of these standards, they placed both their lives of agents and the lives of those in proximity at risk as the purpose of announcing one's status as an officer of the law is to minimize the potential for surprised and violent response. *See, e.g., Garza v. State,* 632 N.W.2d 633, 639 (Minn. 200 1 )(stating that one reason why police are required to knock and announce is to "decrease the potential for a violent response when a search is executed"); *State v. Sakellson,* 379 N.W.2d 779, 782 (N.D. 1985) ("[A]n unannounced entry by officers increases the potential for violence by provoking defensive measures a surprised occupant would otherwise not have taken had he known that the officers possessed a warrant to search his home."); Mark Josephson, Note, *Fourth Amendment--Must Police Knock and Announce Themselves Before Kicking in the Door of a House?,* 86 J. CRIM. L. & CRIMINOLOGY 1229, 1234 (1996)("Unannounced entries put the officers involved at risk of being shot by frightened

homeowners."). Such an approach should not be condoned by this Court as it represents (1) disregard for this Court's role as overseer, (2) disdain for Constitutional limitations on investigative practices, and (3) a reckless, high-risk procedural shortcut that places the lives of all concerned in unnecessary peril.[3]

Outside the narrow confines of ports of entry, immigration officers are law enforcement officers and as such are obliged to follow well-defined guidelines on investigations. The present scenario represents a troubling abuse of authority that should not be countenanced by this Court. In light of the foregoing, the appropriate remedy is dismissal of the Indictment.

**F. Hearing Requested**

As there are clear factual conflicts between the description of events by respective parties to this case, Mr. Martinez-Gonzalez requests a hearing on this Motion to resolve the same. *See United States v. Harrelson,* 705 F.2d 733, 737 (5th Cir. 1983) ("an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact").

---

[3] One could readily-imagine immigration "sweeps" in which agents forcibly access private residents in search of illegal immigrants without suspicion or warrant. While the fruits of other crimes would be suppressed, § 1326 prosecutions would proceed as the aliens identified in the illegal search would not have their identities suppressed. The alternative to this bleak prospect would be to require investigating agents to monitor suspected illegal activity from public areas rather than forcing a dangerous scenario to bring their investigation to a more rapid close. This is consistent with Fifth Circuit requirements governing "knock and talk" investigations.

## III. CONCLUSION

Based upon the foregoing, Mr. Martinez-Gonzalez respectfully asks this Court to suppress all evidence obtained as a result of the illegal search conducted on June 06, 2024, and dismiss the Indictment against him in this case.

Respectfully submitted,

/s/Damian Rasmussen
Damian Rasmussen
Attorney for Defendant
State Bar No.: 24110952
4621 Pershing Dr.
El Paso, Texas 79903
Tel: (915) 400-7785
damian@damianrasmussenlaw.com

By: /S/Damian Rasmussen
Damian Rasmussen
Texas Bar No. 24110952
Law Offices of Damian Rasmussen
4621 Pershing Dr.
El Paso, Texas 79903
Telephone: 915.400.7785
Email:
damian@damianrasmussenlaw.com

## CERTIFICATE OF SERVICE

I, Damian Rasmussen, do certify that on August 21, 2024, I caused the instant motion to be filed with the Clerk of the Court using the CM/ECF system that will serve all other parties entitled to service and notice.

/s/*Damian Rasmussen*
Damian Rasmussen